IN THE MATTER OF EUGENE LAMPHERE.

*Habeas corpus—Sentence of imprisonment to commence after expiration of prior sentence—Commencement does not depend on action of the law or of any court—But upon determination of prison authorities as to allowance of time for good behavior on first sentence—Is indefinite and uncertain, and cannot be sustained in the absence of statute—Michigan never a common-law colony—English common law, unaffected by statute, adopted into its jurisprudence—Always the purpose to define the whole ground of criminal law by statute as far as possible—No crime punishable except by virtue of a statutory provision—Undefined offenses fixed within named limits, and beyond the unregulated discretion of the courts—Criminal law—Should not be tampered with except by legislation—This must be done by statute under our constitution—Precise purpose designed must be pointed out in title and provisions.*

1. The petitioner was convicted of an assault with intent to murder, and sentenced to twelve years' imprisonment in the State prison. At the

same term of court he was sentenced to three years' imprisonment, for larceny, *from* and *after* the *expiration* of the first sentence. Having saved three years of the first sentence by good conduct, he applies for his discharge, denying the legality of the second sentence under which he is imprisoned.

*Held,* that the application is governed by that of Harris Bloom (see 53 Mich. 597); that the second sentence does not depend, as to its commencement, on the action of the law or of any court, but upon the determination of the prison authorities as to how much, if any, time shall be allowed the petitioner on his *first* sentence for good conduct, and is therefore uncertain and indefinite, and, in the absence of statute, cannot be upheld.[1]

2. Michigan was never a common-law colony, and it is the English common law, unaffected by statute, which has been recognized as adopted into our jurisprudence. While we have kept in our statute-books a general statute resorting to the common law for all non-enumerated crimes, there has always been a purpose in our legislation to have the whole ground of criminal law defined, as far as possible, by statute; and there is no crime whatever punishable by our laws except by virtue of a statutory provision, the punishment of all undefined offenses being fixed within named limits, and beyond the unregulated discretion of the courts.

---

[1] How. Stat. § 9704.—

" The warden shall keep a record of each and all infractions of rules of discipline by convicts, with the names of the persons offending, and the date and character of each offense, which record shall be placed before the managers at each regular meeting of the board, and every inmate who shall have no infraction of the rules of the prison or laws of the State recorded against him shall be entitled to a deduction for each year of his sentence, and *pro rata* for each part of a year when the sentence is for more or less than one year, as follows: From and including the first year up to the third year, a deduction of two months for each year; from and including the third year up to the fifth, a reduction of seventy five days for each year; from and including the fifth up to the seventh year, a deduction of three months for each year; from and including the seventh year up to the tenth year, a deduction of one hundred and five days for each year; from and including the tenth year up to the fifteenth year, a deduction of four months for each year; from and including the fifteenth year up to the twentieth year, a deduction of five months for each year; from and including the twentieth year up to the period fixed for the expiration of the sentence, six months for each year.

The inspectors shall provide by rule how much of the good time thus earned a convict shall forfeit for one or more violations of the prison rules. The warden, in computing the diminution of time for those now in prison, shall allow them for the good time made up to the time this act takes effect in accordance with the provisions of law previously in force, and thereafter it shall be computed in accordance with the terms of this section.

Whenever a convict has been committed under several convictions, with separate sentences, they shall be construed as one continuous sentence in the granting or forfeiting good time."

3. Whatever elasticity there may be in civil matters, it is a safe and necessary rule that criminal law shall, not be tampered with except by legislation, and under our constitution this must be done by statutes clearly pointing out in their titles and provisions the precise purpose designed.

. *Habeas Corpus.* Discharge applied for April 20, 1886. Granted April 22, 1886.

The facts are stated in the opinion, and in head-note 1.

*Watts & Smith,* for petitioner:

CAMPBELL, C. J.   The prisoner was convicted in 1877 of an assault with intent to murder, and sentenced to imprisonment for twelve years in the State prison.   At the same term of court he was sentenced for larceny to a term of three years, "from and after the expiration of the term of twelve years' sentence this day imposed."   This latter sentence is said to have been imposed by the judge who tried him on the smaller charge, of which he was convicted some time before the greater conviction.   This might have presented some difficulty if we were not satisfied that the second sentence was illegal on other grounds.   By good conduct the prisoner has saved three years of his twelve-years sentence, and is entitled to his discharge from that.   The question raised by the prison authorities is whether they can continue to hold him on the second sentence.

The only case which has presented any analogous question in this Court is *Harris Bloom's Petition,* 53 Mich. 597, where the prisoner had been committed to the Detroit house of correction for two terms, of three months each, for the felony of larceny.   The form of the second sentence made it run for three months from April 24, 1884, unless the first sentence should sooner expire or he should be otherwise entitled to release, in which case it was to run for three months from that time.   It was held, without discussing any other point, that the second sentence was too uncertain and indefinite as to the time of its commencement, and, in the absence of statute, could not be upheld.

The second sentence in the present case comes within the same mischief, inasmuch as the time for its beginning is not made to depend on the action of the law or of any court, and it rests with the prison authorities to determine how much, if any, time is to be allowed for good conduct. We think it is governed by that decision.

But, as the subject is one which may call for legislative action for the future, we think it proper to refer to some considerations underlying such action.

Upon the hearing it appeared, as it did in *Bloom's Case*, that there is a conflict of authority, which seems to come more from local usage and legislation than from the common law. The relations of this commonwealth to the common law are not altogether conformed to the holdings of some other states. In many of the states, statutes of parliament passed before or during the early days of the American colonies, as well as old colonial statutes and usages, have been recognized as part of the local common law, and have been construed and applied by the courts. But Michigan was never a common-law colony, and while we have recognized the common law as adopted into our jurisprudence, it is the English common law, unaffected by statute.

In 1810 an act was passed putting an end to all the written law of England, France, Canada, and the Northwest and Indiana territories, as well as the French and Canadian customs, leaving no statute or code law in force except that of Michigan territory and the United States: 1 Terr. Laws, 900. And while we have kept in our statute-books a general statute resorting to the common law for all non-enumerated crimes, there has always been a purpose in our legislation to have the whole ground of criminal law defined, as far as possible, by statute. There is no crime whatever punishable by our laws except by virtue of a statutory provision. The punishment of all undefined offenses is fixed within named limits, and beyond the unregulated discretion of the courts. While we refer with profit to the rulings of other courts, there are many cases where we cannot regard them as binding.

In the numerous citations in the elementary books, and especially the valuable treatises of Mr. Bishop, he seems to favor the notion that cumulative sentences are recognized as good by common law, as no doubt they are by much American authority on the subject.  But the English citations are not numerous, and the oldest one seems to be *Wilkes' Case*, 4 Brown, Parl. Cas. 360.  In that case it was held that two separate sentences, of several months each, for misdemeanor, were lawfully imposed.  The fact that the question was removed into the house of lords indicates that there must have been felt some doubt about it, and the decision itself is not much fortified by reasoning or precedents. His prosecutions have never been considered as doing much towards settling law.  Nevertheless, ever since, although it may be doubted how long before, it has been held that consecutive sentences were valid on convictions of misdemeanors; and, inasmuch as, under the English law, the power of imprisonment for misdemeanors was largely discretionary, and one sentence might be made to last as long as several sentences, it is not surprising that the subject is not much discussed by the English books.

There is, however, no authority to be found, so far as our examinations have gone, and so far as the criminal law citations are found in the best elementary books, which holds that such a practice exists at common law in felonies.  In *Reg. v. Cutbush*, L. R. 2 Q. B. 379, it is said distinctly that a statute was necessary to apply to felonies the practice in misdemeanors.  That case points out how the British statutes have provided for it.  That is a recent, and, beyond question, a correct, statement of the law.

Whatever elasticity there may be in civil matters, it is a safe and necessary rule that criminal law should not be tampered with except by legislation.  Under our constitution this must be done by statutes clearly pointing out in their titles and provisions the precise purpose designed.  We have in this State not only county jails, but several public prisons designed to hold different classes of prisoners.  In the State prison there can be no imprisonment except for

felonies. In other prisons varying rules prevail. It is quite possible for the same offender, in the same court, to be tried for offenses where the confinement must be in different places. If cumulative sentences can be imposed in all cases, the results may be very singular. The imprisonment may begin in one jail, and the next sentence may be in another, and practical difficulties may easily be suggested that can only be solved by legislation. As we have no statutes on the subject, we must, in our opinion, wait until the Legislature shall see fit to devise adequate means to avoid these difficulties.

In our opinion, the prisoner should be discharged

CHAMPLIN and SHERWOOD, JJ., concurred. MORSE, J., did not sit.