*In re* EVANS

**EVANS v. DEPARTMENT OF CORRECTIONS, PARDON AND PAROLE COMMISSION**

1. Criminal Law—Sentence—Parole Violation—Credit for Time Served.

A person found guilty of violation of parole from state prison by reason of conviction of a Federal crime *held,* entitled to credit, under prior law, on his state prison term for time served in Federal custody where a warrant for violation of his state parole was issued soon after his Federal conviction but where no attempt was made to execute the warrant until his release from Federal prison (MCLA § 791.238).

2. Criminal Law—Parole—Revocation—Speedy Hearing.

Parole revocation proceeding is not a trial with full constitutional implications, but a delinquent parolee has a right to have the parole board exercise reasonable diligence in seeking to hold a revocation hearing where the parolee is in Federal custody on a conviction of another crime.

3. Criminal Law—Parole—Violation of Parole—Warrant—Execution.

The parole board, having issued a warrant for a delinquent parolee not in the custody of the board, must seek to execute it with reasonable diligence.

---

References for Points in Headnotes

[1] 39 Am Jur, Pardon, Reprieve and Amnesty, §§ 91, 93–95.
[2, 3] 39 Am Jur, Pardon, Reprieve and Amnesty § 95.

Appeal from Wayne, Charles Kaufman, J. Submitted Division 1 May 13, 1969, at Detroit. (Docket No. 4,759.)   Decided July 30, 1969.   Rehearing denied October 15, 1969.

Complaint by Robert Lee Evans for a writ of habeas corpus against the Department of Corrections Pardon and Parole Commission. Complaint dismissed. Plaintiff appeals. Reversed and remanded for the issuance of the writ and termination of parole.

*Hyman, Gurwin, Nachman & Friedman* (*Lawrence Halpern,* of counsel), for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William F. Bledsoe,* Assistant Attorney General, for defendant.

Before: Fitzgerald, P. J., and Levin and T. M. Burns, JJ.

T. M. Burns, J. Appellant here appeals the dismissal of his complaint for a writ of habeas corpus against the department of corrections, pardon and parole commission, by the circuit court. The essential facts in this cause are not in dispute.

On January 30, 1953, following a conviction for possession of narcotics, plaintiff was sentenced in the recorder's court of the city of Detroit to Jackson prison for a period of from eight to ten years. In May, 1958, he was placed on parole pursuant to MCLA § 791.236 (Stat Ann 1954 Rev § 28.2306), but was to remain in legal custody of the parole board under MCLA § 791.238 (Stat Ann 1954 Rev § 28-.2308) for the balance of his maximum term to August 23, 1960.

On September 23, 1958, plaintiff was arrested by the Federal authorities and charged on October 19, 1958, with a violation of the Federal narcotics laws. He was tried and convicted in the United States district court for the eastern district of Michigan, southern division, on February 13, 1959, and thereafter, on March 18, 1959, was sentenced to a Federal prison for 12 years. Plaintiff appealed from the conviction and prevailed. Thereafter, on January 31, 1962, plaintiff was re-tried and convicted for the above-mentioned Federal offense and sentenced to 10 years, the sentence to commence on March 18, 1959, the date of his original sentencing in Federal court.

The Assistant Attorney General who appeared at the hearing on the motion for the writ stated that after the charge in Federal court the parole board promptly issued a warrant charging plaintiff with a parole violation as of the date of his arrest by Federal authorities. This warrant was issued on May 4, 1959, and would have been executed, claims the defendant, except that the petitioner was a Federal prisoner, even though he was in Wayne county jail for an extended time during this period.

On April 7, 1965, plaintiff was released from Federal prison and placed on parole by the Federal authorities. On that same date he was arrested by Michigan parole officers executing the 1959 warrant. The defendant claimed at the hearing that this was the first opportunity to execute the warrant. Having arrested the plaintiff, the parole board then decided not to revoke his parole but to re-parole him with such parole to run concurrently with the Federal parole to March 7, 1967. The parole board also decided that plaintiff was not to be given credit on the Michigan sentence, which was to have expired

August 23, 1960, for the time spent in Federal custody from September 23, 1958 to April 7, 1965.

On August 10, 1966, plaintiff was arrested in Highland Park, Michigan, on a charge of illegal possession of narcotics; and although that charge was dismissed by the Highland Park municipal court, on the basis of a motion to suppress illegally seized evidence, the defendant issued a parole violation warrant on September 22, 1966, with respect to these charges. The plaintiff thereafter initiated these proceedings.

It should be noted that after the hearing on the motion for the writ and its denial, the plaintiff was again arrested by Federal authorities on a narcotics charge. The plaintiff has been arraigned and released on bond pending trial in the Federal district court of eastern Michigan, southern division.

The defendant, not having filed a brief on appeal, relies upon the arguments presented in the record. The thrust of the defendant's argument is that under MCLA § 791.238 (Stat Ann 1954 Rev § 28.2308) it is directed not to credit against a term any time from the date of declared delinquency until the alleged delinquent is taken into actual custody by the parole board and returned to the institution from which he was released.

After careful examination of this statute and the cases of *In re Ginivalli* (1953), 336 Mich 101, and in *In re Carpenter* (1957), 348 Mich 408, we find the present case is distinguishable from the cases and is not within the purview of the particular clause of the cited statute.

The clause upon which the defendant relies deals with prisoners on parole who violate the provisions of their parole and remain at large. We note parenthetically that there has been a recent amendment to MCLA 1969 Cum Supp § 791.238 (Stat Ann 1969

Cum Supp § 28.2308)[1] which would allow the parole board to deny a parolee any credit for time from "date of declared violation to date of his availability for return to any penal institution under the control of the commission." However, there is no showing here by the defendant that plaintiff was unavailable for return and certainly absent some request for custody the defendant has a heavy burden to prove a practice which would deny it custody. These questions of custodial availability or unavailability which may be relevant under the amended section are not before us, however, and we do not concern ourselves with them.

We must dispose of this case under the prior law. Under the prior law, the so-called "dead time" provision declared that a parolee could not be credited as time served any time from date of declared delinquency to arrest. On its face then the prior law dealt with the situation where the delinquent parolee was at large and his whereabouts were unknown to the parole authorities.

The petitioner here comes under the provision of MCLA § 791.238 (Stat Ann 1954 Rev § 28.2308) which reads:

"Any prisoner committing a crime while at large upon parole and being convicted and sentenced therefor shall be treated as to the last incurred term, as provided under section 34 of this act."

The plaintiff was not at large during his declared delinquency, but in federal custody on a separate charge. The plaintiff points to the case of *In re Carey* (1964), 372 Mich 378, where the Supreme Court decided that unless there was specific statutory direction sentences imposed in state courts subsequent to a Federal sentence should run con-

---

[1] PA 1968, No 192.

currently. The plaintiff argues that if he had been sentenced in the state court after his sentence in Federal court the state sentence would have run concurrently and, therefore, it is grossly unfair for us to allow the parole board to deny him credit for the time served in Federal custody in this case. In MCLA § 791.234 (Stat Ann 1969 Cum Supp § 28-.2304) to which we are referred by MCLA § 791.238 (Stat Ann 1954 Rev § 28.2308), we note that the statute speaks in terms of cases where the prisoner has received sentences for consecutive terms. Although a contrary result may be commanded by the amended § 38, we think under the law as it applies to this case, *In re Carey* (1964), 372 Mich 378, directs us to find that the parole board should have credited the plaintiff for time served in Federal custody. We are persuaded to this result by what we consider to be fundamental standards of fairness, but even more so by the arguments presented by the Attorney General in the *Carey* case. We see in those arguments the direct parallel to the case before us.

The Attorney General argued there that, "the department of corrections has consistently held that sentences to be served in a federal penitentiary and a Michigan penitentiary were consecutive and has not considered that a person had served his minimum Michigan sentence until he had spent the allotted time in a Michigan prison." The Supreme Court clearly rejected that argument as without justification and eliminated the distinction between time served in Federal and Michigan prisons. *In re Carey, supra* (p 381).

Here we are faced with a case even more clear than *Carey*. Here the plaintiff had served his minimum sentence in a Michigan prison. Here the plaintiff would have been discharged completely from parole board custody upon serving his maxi-

mum sentence just two years after he was arrested by Federal authorities. Yet, here the plaintiff, almost nine years past the end of his original maximum sentence, is still seeking his release.

The parole board here issued the warrant in a timely manner but refused to attempt execution. It chose instead to place a detainer on the plaintiff's release from Federal prison. Then after refusing to allow the state sentence to run concurrently with the Federal imprisonment, and after arresting this plaintiff for his parole violation, the board reparoled him with this parole to run concurrently with the federal parole until March 7, 1967.

Although a parole revocation hearing is not a trial with full constitutional implications, certainly we think the allegedly delinquent parolee has a right to have the parole board exercise reasonable diligence in seeking to hold a revocation hearing. If he is at large and if the parole board has knowledge of his whereabouts, either actual or constructive, it must seek to execute its warrant within a reasonable time. *Greene* v. *Michigan Department of Corrections* (CA 6, 1963), 315 F2d 546. If he is in custody, as here, the parole board having issued a warrant must seek with that same degree of diligence to execute it, and to hold the revocation hearing. On this right to a hearing within a reasonable time, and noting that if he were in the custody of the parole board such hearing by statute must be held within 30 days, MCLA § 791.240 (Stat Ann 1954 Rev § 28-.2310),[2] we find the reasoning behind the recent United States Supreme Court case of *Smith* v. *Hooey* (1969), 393 US 374 (89 S Ct 575, 21 L Ed 2d 607) which was concerned with constitutional right to speedy trial, most persuasive. We think the con-

---

[2] Repealed by PA 1968, No 192, which replaced it by § 40a (MCLA 1969 Cum Supp § 791.240a; Stat Ann 1969 Cum Supp § 28.2310[1]).

siderations which they expressed there are relevant to a hearing on parole revocation as well.

Therefore, we quote at length from the opinion in *Smith* v. *Hooey, supra* (pp 378–380) :

"At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer 'undue and oppressive incarceration prior to trial.' But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his sentence greatly worsened, by the pendency of another criminal charge outstanding against him.

"And while it might be argued that a person already in prison would be less likely than others to be affected by 'anxiety and concern accompanying public accusation,' there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large. *Cf. Klopfer* v. *North Carolina, supra,* 386 US at 221, 222 (87 S Ct at 992, 993, 18 L Ed 2d at 6, 7). In the opinion of the former Director of the Federal Bureau of Prisons,

" '[I]t is in their effect upon the prisoner and our attempts to rehabilitate him that detainers are most corrosive. The strain of having to serve a sentence with the uncertain prospect of being taken into the custody of another state at the conclusion interferes with the prisoner's ability to take maximum advantage of his institutional opportunities. His anxiety

and depression may leave him with little inclination towards self-improvement.'

"Finally, it is self-evident that 'the possibilities that long delay will impair the ability of an accused to defend himself' are markedly increased when the accused is incarcerated in another jurisdiction. Confined in a prison, perhaps far from the place where the offense covered by the outstanding charge allegedly took place, his ability to confer with potential defense witnesses, or even to keep track of their whereabouts, is obviously impaired. And, while 'evidence and witnesses disappear, memories fade, and events lose their perspective,' a man isolated in prison is powerless to exert his own investigative efforts to mitigate these erosive effects of the passage of time."

Although the parole board has broad power discretion, we believe that in the case of this plaintiff it has abused it by not attempting to execute its warrant and by not giving him a timely hearing.

Therefore, we reverse and remand for the issuance of the writ and termination of parole.

All concurred.